**HANG & ASSOCIATES, PLLC**
ATTORNEYS AT LAW
136-20 38th Avenue, Suite 10G
Flushing, New York 11354

January 27, 2021

Diana Y. Seo, Esq.
Tel : (718) 353-8588
Fax: (718) 353-6288
Email: dseo@hanglaw.com

**VIA ECF:**
Magistrate Judge Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Choi v. Home & Home Corp. et al

Case 1:17-cv-05400-ARR-RML

Letter Motion to Approve Proposed Settlement Agreement

Dear Judge Levy:

This firm is counsel to the Plaintiff in the above-referenced action. I respectfully submit this letter motion on behalf of Plaintiff Ik Ho Choi and Defendants Home & Home Corp., Gi Joon Kye, and In Young Lee for approval of the Parties' negotiated Proposed Settlement Agreement and Release (the "Settlement Agreement") fully executed on January 5, 2021 is herein attached as **Exhibit A**. Additionally, a fully executed and negotiated Proposed First Amendment of Settlement Agreement and Release Pursuant to Section 12 of the Agreement (the "First Amendment") reflecting the re-allocation of the second installment payment is herein attached as **Exhibit B.**

For the reasons set forth below, the Parties respectfully request that the Settlement Agreement be approved pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015) and be found to be fair and reasonable in accordance with the factors set forth in *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).

## I. Plaintiff's Allegations and Defendants' Responses

This action was originally brought by Plaintiff on September 14, 2017 for alleged failure to pay overtime wages, spread of hours, and failure to give a wage notice at time of hiring pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York Labor Law

("NYLL").

Plaintiff Ik Ho Choi ("Plaintiff") alleged that he was a former employee of Home & Home Corp., Gi Joon Kye, and In Young Lee ("Defendants"). Plaintiff alleged that he was employed as a store worker for Defendants' business, Home & Home Corp., located at 31-85 Whitestone Expressway, Flushing, NY 11354 from January 2006 to September 2017. Plaintiff alleged that Defendants misclassified Plaintiff as an exempt employee and did not compensate him for overtime compensation according to state and federal laws.

Plaintiff alleged that his main job responsibilities were merely receiving and unloading merchandise form trucks, setting up the merchandise, and on-the-floor sales throughout his employment with Defendants. However, Plaintiff alleged that although he performed the same job duties, he worked under different job titles such as a General Employee from 2006 to 2011, Restaurant Supply Manager from 2011 to around 2015, and Assistant General Manager for Restaurant Supplies Department from 2015 until August 2017. Plaintiff further alleged that although Defendants classified Plaintiff as a manager, Plaintiff did not have any managerial authorities or duties. Throughout Plaintiff's employment, he alleged that he generally worked approximately fifty-four (54) hours per week, six (6) days per week, according to the following schedule: on Mondays - from 8:30 a.m. until 2:00 p.m.; on Wednesdays and Thursdays - from 10:30 a.m. until 8:00 p.m.; on Fridays and Saturdays – from 8:30 a.m. until 6:00 p.m.; and on Sundays – from 9:00 a.m. until 7:30 p.m.

Plaintiff alleged that because Defendants misclassified Plaintiff as an exempt employee, Plaintiff received a fixed annual salary regardless of the hours he actually worked. Plaintiff alleged that from on or about September 2011 until on or about July 2012, he received yearly salary of $39,000; from on or about August 2012 until on or about June 2015, Plaintiff received yearly salary of $42,000 per year; and from July 2015 until September 2017, Plaintiff received yearly salary of $46,000.

Plaintiff alleged that he was misclassified as an exempt employee for the entire period of his employment, did not receive proper overtime wage, and spread of hour during the relevant period. Plaintiff also alleged that he had never received any proper wage Notice.

Defendants Home & Home Corp., Gi Joon Kye, and In Young Lee deny the allegations asserted by Plaintiff. Defendants specifically deny that Plaintiff lacked the managerial authorities and was misclassified as an exempt employee, along with any potential liability. Among other matters, Defendants dispute both Plaintiff's claimed days and hours worked, and Plaintiff's calculation of purported damages.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.     **Settlement Amount**

At the inception of the litigation, Plaintiff submitted a settlement demand in the amount of approximately $277,924.10, exclusive of attorney's fees and costs. The demand was wholly based on Plaintiff's calculation of the maximum possible recovery if he was able to establish each and every claim including the liquidated damages (an amount which was disputed by Defendants).

The Parties engaged in good faith settlement discussion and engaged in formal discovery before attending a settlement conference on September 8, 2020. Although the Parties were unable to settle at the settlement conference, they continued to engage in good faith settlement discussions.

On or about October 27, 2020, the Parties finally agreed on the settlement amount of $50,000.00 in order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions in the litigation. The gross settlement amount is $50,000.00, inclusive of Plaintiff 's counsel's fees and costs. At the time of the full execution of the Settlement Agreement, the attorney's fees and costs were allocated as $16,500.00 for attorney's fees, $3,642.68 for costs, and $30,037.32 for settlement payment to Plaintiff. However, after Plaintiff counsel's finding of additional invoices in the total amount of $576.82 reflecting the costs that were left out at the time of the full execution of the Agreement, the Parties agreed to reflect the invoices in their Settlement Agreement. On or about January 20, 2021, the Parties agreed to execute the First Amendment to include the invoices in the total amount of $576.82 to be re-allocated in the 2nd installment payment. (*See,* **Exhibit B***).*

According to the First Amendment, the gross settlement amount of $50,000.00 is allocated as follows: $16,500.00 for attorney's fees, $4,039.50 for costs, and  $29,460.50 for settlement payment to Plaintiff. Plaintiff's counsel's attorney bill and invoices are herein attached as **Exhibit C**. This gross settlement amount reflects a reasonable compromise between the Parties' dispute over Defendants' alleged failure to  overtime wages, spread of hours, and failure to give a wage notice at time of hiring.

## III. **The Settlement Agreement is Fair and Reasonable**

Plaintiff seeks final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). As set forth in further detail below, and in accordance with *Wolinksy v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), The Parties are in agreement that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the

seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these factors, the Parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

## A. **The Range of Possible Recovery**

Based on damage calculations prepared by Plaintiff's counsel relying on Plaintiff's allegations, Plaintiff contends that he is owed $136,462.30 in back wages, exclusive of statutory penalties, liquidated damages, and attorney's fees. These calculations, however, do not factor Defendants' defenses asserted in the litigation and the inherent risks and uncertainties of proceeding with a jury trial. Notwithstanding, after extensive settlement discussions, the Parties were able to negotiate a Settlement Agreement for $50,000.00, inclusive of attorneys' fees and costs.

## B. **The Seriousness of the Litigation Risks Faced by the Parties**

Considering the risks and the uncertainty of trial, Plaintiff's counsel believe that this settlement is a fair result and should thus be approved. See e.g. *Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted). In addition, the cost of the Settlement Amount is substantially less than the anticipated cost trial. By settling now rather than litigating further, Plaintiff avoids the risk of losing at trial or, even if prevailing at trial, avoids the inability to collect due to the financial hardship faced by Defendants. Continued litigation therefore will negatively impact the Plaintiff's chances at any recovery. Most importantly, Plaintiff understands the situation, is satisfied with the settlement amount, and voluntarily and willingly entered into the Settlement Agreement.

## C. **The Settlement Negotiations Occurred at Arm's Length**

From the onset of this case the Parties engaged in communications and discussions in an effort to settle this matter, through their counsel. Thereafter, through arm's length negotiations after formal discovery, they reached an agreement to proceed this case in a more time efficient and practical way as it is reflected in the mutually agreed and fully executed Settlement Agreement.

## D. **The Proposed Settlement Does Not Conflict with the *Cheeks* Admonitions**

The settlement agreement does not contain any terms that would militate against the Court approving it. See *Nieto v. Izzo Construction Corp.*, No. 15 Civ. 6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (Levy, Mag.). For instance, the agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson*

*Restaurants Inc.*, No. 14 CIV. 2740 AT GWG, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, No. 14 Civ. 1274, 2015 WL 1455689, at *5 (S.D.N.Y. Mar. 30, 2015)); also compare *Ezpino v. CDL Underground Specialists, Inc.*, No. 14CV3173DRHSIL, 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017), report and recommendation adopted, No. CV143173DRHSIL, 2017 WL 3037406 (E.D.N.Y. July 17, 2017) (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); with Gonzalez, 2015 WL 6550560, at *3 (citing *Cheeks*, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

Other factors present do not weigh against approval of the settlement. This matter was not conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Plaintiff is no longer working for the Defendants so there is no likelihood that Plaintiff's circumstances will recur. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

### E.  **Plaintiff's Counsel Is Entitled to Reasonable Attorney's Fees and Costs**

The Settlement Agreement also provides for reasonable attorney's fees.  Pursuant to the firm's agreement with the Plaintiff, the firm will be reimbursed $4,039.50 in filing fees/costs, and retain 1/3 of the remaining settlement amount of $16,500.00, which comes to a total of $20,539.50. Based on my experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorney's fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. See, e.g., *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in *Cheeks*, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks*, 796 F3d at 206 (citing *Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015). Therefore, as 1/3 is standard practice in FLSA claims, it is a fair number for this matter as well.

Hang & Associates, PLLC ("Hang & Associates" or "Hang Law") represents both plaintiffs and defendants in litigating claims arising out of the employment relationship, including claims for employment discrimination, wage and hour issues, and contract disputes.  Jian Hang, Esq., principal attorney of Hang & Associates, has over ten years of experience in the field of employment law. His office currently represents plaintiffs with wage & hour claims in more than 100 lawsuits in federal and state courts and is well respected in the Flushing community. Prior to forming Hang & Associates Mr. Hang practiced labor law at Epstein, Becker & Green, P.C.. Hang & Associates focuses exclusively on employment law. Given his years of experience, and the practice's specialized focus on employment law, Jian Hang typically charges an hourly rate of $350.

Mr. Phillip H. Kim, Esq., a former associate at Hang & Associates, earned his law degree from Brooklyn Law School and completed his undergraduate studies at Colgate University. As a law student, he served as Associate Research Editor for the Journal of Law & Policy. Upon his graduation, Mr. Kim held a judicial fellowship position under a Judge in the New York State Supreme Court, where he gained valuable legal writing experience prior to joining Hang & Associates. Mr. Kim had a diverse background in civil litigation including labor and employment litigation. At Hang & Associates, Mr. Hang successfully litigated numerous labor and employment law cases on both plaintiffs' and defendants' sides, including matters involving the FLSA, NYLL, and ADA. Mr. Kim billed an hourly rate of $300 per hour.

Mr. Ken H. Maeng, Esq., a former associate at Hang & Associates, had experience in a wide variety of labor matters. He graduated with a Juris Doctorate from Brooklyn Law School in 2016 and joined Hang & Associates in 2018. Being fluent in Korean, he specialized in representing the Korean community in these cases both on plaintiff's and defendant's side. Prior to joining Hang & Associates, Mr. Maeng worked for a boutique employment law firm in New Jersey where he successfully litigated numerous employment law cases on Defendant's side, including matters involving the FLSA and NYLL. Before Mr. Maeng left the firm, he independently handled a case load of 30+ cases which included client intake, discovery, depositions, motion practice, settlement and possible trial. Given his extensive experience, Hang Law billed his hourly rate at $275 to $300. *See Ross v. Lake Norman Enters.*, LLC, No. 1:17-cv-06332-RRM-RER, 2019 U.S. Dist. LEXIS 68156 (E.D.N.Y. Apr. 19, 2019); *Teow et al v. 66S Fusion, Inc. et al.*, No. 1:18-cv-05268-RLM, Dkt (17 – 20). He is licensed to practice in New York and New Jersey and is admitted to the United States District Court for the District of New Jersey and the Northern, Eastern, and Southern Districts of New York.

Ms. Keli Liu, Esq., a former senior associate, received J.D. degree from the Syracuse University College of Law in 2013. Since she joined Hang Law in late 2015, Ms. Liu practiced employment and labor litigation exclusively and worked as first chair and second chair counsel in bench trials and jury trials. Ms. Liu litigated wage-and-hour actions in the federal courts, including the Southern and Eastern Districts of New York, the District of New Jersey, and the District Court of Pennsylvania. The extent of her litigations included defendants' and plaintiffs' actions, collective and class actions, and/or wage-and- hour and employment discrimination actions. Ms. Liu also handled several arbitration matters in front of the American Arbitration Association, as well as discrimination-related matters with the EEOC. In the context of evaluating fairness of a settlement, Ms. Liu was awarded $320.00 per hour in fees in 2018. See *De Hui Mu v. Han Dynasty Nyu Corp.*, 2018 U.S. Dist. LEXIS 181110, at *6 (S.D.N.Y. Oct. 17, 2018). Ms. Liu only billed $300.00 per hour in this case.

Mr. Shan Zhu, Esq. is an associate attorney on this case and is admitted in the State of New York. Mr. Zhu joined Hang & Associates in 2019. Before he joined Hang & Associates, he worked for a boutique employment law firm in New Jersey since 2018 where he acquired his experience litigating FLSA matters representing both employees and employers. Mr. Zhu also represents clients in complex commercial litigations. Mr. Zhu received a Juris Doctor degree from Case Western Reserve University School of Law in January 2018; and an LLM from the same law school in 2014. Being fluent in Mandarin Chinese and English, Mr. Zhu specializes in representing

the Chinese speaking community in these cases both on plaintiff and defendant side. Mr. Zhu bills an hourly rate of $300 per hour.

I, Diana Y. Seo, Esq., have been practicing employment and labor law since joining Hang & Associates, since 2019. I received her J.D. Degree in 2014 and I am duly licensed and admitted to practice law in both Arizona and New York. Being fluent in Korean, I specialize in representing the Korean community in these cases both on plaintiff's and defendant's side. From 2015 to mid-2016, I worked as an associate attorney at MK Law Group and handled various family based and business immigration cases. I handled many high-end substantive legal work including drafting and negotiating commercial contract, joining deal terms and investigating terms, and advising on regulatory compliance matters relating to the states I am licensed in. Prior to joining Hang & Associate, I provided immigration legal representation and also assisted handling various family, civil and criminal cases at Law Offices of Stephen A. Shikes, Esq., and at Law Offices of Dennis Chang, P.C. Currently, I independently handle a case load of more than thirty cases which includes client intake, discovery, depositions, motion practice, and settlement. Given my extensive experience, Hang Law currently bills my service to clients at $275 to $300 per hour.

Hang & Associates spent 216.80 hours on this matter, and had it been billing hourly, it would have incurred fees and costs of $69,079.50.

## IV.   Conclusion

For the foregoing reasons, counsel for all Parties respectfully submit that the Proposed Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Proposed Settlement Agreement.

Respectfully submitted,

*/s/ Diana Seo*
Diana Y. Seo, Esq.

cc: Defense Counsel (by ECF)